IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

|  |  |
|---|---|
| | ) 1:24-CV-122-SPB-RAL |
| | ) |
| CHARLES TALBERT, | ) SUSAN PARADISE BAXTER |
| | ) United States District Judge |
| | ) |
| Plaintiff | ) RICHARD A. LANZILLO |
| | ) Chief United States Magistrate Judge |
| | ) |
| v. | ) Report and Recommendation on |
| | ) Plaintiff's Motion for Judgment on the |
| | ) Pleadings [117]; Plaintiff's Motion for |
| RANDY IRWIN, et al, | ) Judgment on the Pleadings [119]; |
| | ) Plaintiff's Motion for Summary |
| | ) Judgment [133]; Plaintiff's Motion for |
| Defendants | ) Summary Judgment [138]; Plaintiff's |
| | ) Motion for Summary Judgment [142]; |
| | ) Plaintiff's Motion for Summary |
| | ) Judgment [145]; Defendants' Motion |
| | ) for Summary Judgment [153] |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the following motions filed by plaintiff

Charles Talbert be denied: Motion for Judgment on the Pleadings [117]; Motion for

Judgment on the Pleadings against McGinley, Gibson, Arias, Casey, Parcell, Shurock

[119]; Motion for Summary Judgment against Beesley [133]; Motion for Summary

Judgment against McGinley, Gibson, and Arias [138]; Motion for Summary

Judgment against Casey [142]; and Motion for Summary Judgment against Purcell

and Shurock [145]. It is further recommended that Defendants' Motion for Summary Judgment [153] be granted in part and denied in part. Specifically, Defendants' motion should be granted as to Talbert's claims against McGinley, Gibson, Arias, and Shurock, but denied as to Talbert's claims against Purcell and Beesley.

II.    Report

A. Procedural background

Plaintiff Charles Talbert, an inmate in the custody of the Pennsylvania Department of Corrections (DOC), initiated this action by filing a *pro se* complaint in the Court of Common Pleas of Forest County. ECF No. 1. Defendants filed a timely Notice of Removal on May 6, 2024. *Id.* After seeking leave to amend, Talbert filed his Amended Complaint – the currently operative pleading – on June 14, 2024. ECF No. 16. That pleading spanned 32 pages, 191 numbered paragraphs, and named a staggering 51 defendants, including governmental agencies, state officials, police officers, DOC supervisors and administrators, corrections officers, DOC and non-DOC medical providers, and the private corporation contracted by the Commonwealth of Pennsylvania to provide food service to DOC inmates. His factual allegations ranged from specific instances of excessive force to amorphous and generalized accusations of governmental fraud. Talbert quickly doubled down on his pleading by filing seven separate motions for summary judgment [ECF Nos. 30, 33, 37, 51, 57, 64, and 89], most before Defendants had even had an opportunity to file an answer or responsive pleading.

On February 6, 2025, the undersigned issued a Report and Recommendation (R&R) recommending that numerous Defendants and claims be severed and dismissed pursuant to 28 U.S.C. § 1915A and Rules 8 and 20 of the Federal Rules of Civil Procedure. ECF No. 86. The Court explained that Talbert's core allegation – "that Defendants utilized excessive force and displayed deliberate indifference by targeting him with pepper spray despite his medical vulnerability" – was buried in "layer after layer of unrelated and irrelevant facts . . . and attempts to implicate dozens of Commonwealth officials and agencies that have no personal connection to his excessive force and deliberate indifference claims under a frivolous theory that those Defendants are violating the Spending Clause and the Pennsylvania Constitution through their misuse of federal funding." *Id.* at pp. 6-7. As such, Talbert's "excessively verbose and overlong complaint" violated Rule 8(d)(1)'s requirement that factual allegations be "simple, concise, and direct" and Rule 20(a)(2)'s prohibition against joining "disparate and unrelated claims against numerous different defendants" in one action. *Id.* (quoting *McKee v. Department of Corrections*, 2024 WL 711615, at *2 (M.D. Pa. Feb. 21, 2024)). The undersigned recommended that all claims and defendants identified in Talbert's pleading <u>except</u> for the excessive force and medical indifference claims outlined in Paragraphs 99-105 against Defendants Casey, Beesley, Parcell, Shurock, Arias, Gibson, and McGinley be dismissed. *Id.* at p. 10. United States District Judge Susan Paradise Baxter adopted the R&R on March 18, 2025. ECF No. 101.

Before the ink could dry on Judge Baxter's Order, and before the remaining Defendants had an opportunity to file an answer or responsive pleading, Talbert filed yet another motion for summary judgment. ECF No. 105. The Court struck that motion as "premature and unsupported by evidence of record" on April 10, 2025, two days after Defendants filed their Answer. ECF Nos. 108, 110.

Undaunted, Talbert responded by filing two motions for judgment on the pleadings [ECF Nos. 117 and 119] and four additional motions for summary judgment [ECF Nos. 133, 138, 142, and 145], each accompanied by a brief in support and concise statement of material facts. Defendants responded by filing their own properly supported motion for summary judgment. ECF No. 153. Each motion is ripe for adjudication.

B. Factual Background

Talbert's surviving excessive force claim accuses Defendants of maliciously deploying olean capsicum (OC) spray against him on three occasions during his incarceration at SCI-Coal Township. This Court previously summarized his factual allegations as follows:

> On March 31, 2023, while in the Restricted Housing Unit (RHU) at SCI-Coal Township, Casey sprayed OC spray into Talbert's cell for no reason, causing him to asphyxiate and suffer from other respiratory conditions. [ECF No. 16] ¶ 99. Talbert was then placed into the infirmary for 24-hour medical observation. *Id.*

> The following day, April 1, 2023, Beesley similarly sprayed OC spray into Talbert's cell in the RHU for no reason, again causing asphyxiation and respiratory distress. *Id.* ¶ 100. Talbert was then taken to the nursing staff and medically cleared. *Id.*

4

On June 28, 2023, Parcell sprayed OC spray into Talbert's cell in the RHU for a third time without justification. *Id.* ¶ 101. Talbert again experienced asphyxiation and other respiratory conditions. *Id.* Talbert maintains that the use of OC spray on each occasion was malicious, sadistic, and reckless.

Following the June 28 incident, Parcell and Shurock denied Talbert access to fresh air or medical attention. *Id.* ¶ 102. Instead, they handcuffed him and forced him back into his "OC contaminated cell" before slamming him onto his bed. *Id.* Talbert attempted to explain that he was having breathing problems but Parcell, Shurock, and Arias ignored him. *Id.* ¶ 103. Arias eventually directed Parcell and Shurock to take Talbert to the strip cage module to prevent him from receiving medical treatment. *Id.* ¶ 104. Talbert remained there for hours without fresh air or medical care. *Id.* ¶ 105.

ECF No. 86 at pp. 4-5.

Talbert filed an administrative grievance after each of these incidents. Following the use of OC spray on March 31, Talbert filed Grievance # 1027379 accusing Casey of "spray[ing] me without medical clearance" and "[leaving me] in my cell for a substantial period of time unable to breathe." ECF No. 156-2 at p. 5. Talbert sought $250,000 in damages as relief. *Id.* The grievance officer denied Talbert's grievance after determining that Talbert's own behavior in covering his cell window and refusing to comply with verbal orders justified the use of OC spray. *Id.* at p. 6. Talbert unsuccessfully appealed the denial of that grievance to final review. *Id.* at p. 1.

Talbert filed Grievance # 1027385 shortly after the incident on April 1, 2023. ECF No. 156-3. Talbert alleged that Beesley, "without cause, entered the chaise next to my cell and, knowing that I have asthma, sprayed OC spray into my vent causing

me serious respiratory impairment." *Id.* at p. 4. Talbert sought $1,000,000 in compensation. *Id.* After seeking an extension of time to investigate Talbert's accusation, the grievance officer deemed his allegation "substantiated" and upheld his grievance. *Id.* at p. 3. However, he denied Talbert's request for compensation. *Id.* In the meantime, Talbert, apparently frustrated by the extension, prematurely filed an appeal to the facility manager seeking a resolution. *Id.* at p. 2. The facility manager, noting the premature filing, upheld the hearing officer's response and denied Talbert's appeal. *Id.* Talbert did not appeal Grievance # 1027385 further. *See* ECF No. 156-1.

Finally, Talbert filed Grievance # 1042142 after the incident on June 28, 2023. ECF No. 156-4. He accused Purcell of "spray[ing] 3 seconds worth of OC into my vent" despite not "knowing if I was having a medical emergency." *Id.* at p. 7. Talbert requested $50,000 in damages, $500 in commissary credit, and that Purcell be suspended. *Id.* The grievance officer denied Grievance # 1042142 at the initial level of review after determining that the use of OC spray was appropriate under the circumstances. *Id.* at p. 1. Talbert did not appeal. *See* ECF No. 156-1.

C. Standard

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient

showing on each of those elements.  When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Finally, because Plaintiff is proceeding pro se, the court must "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs,* 165 F.3d 244, 247-48 (3d Cir. 1999). Nevertheless, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook,* 238 F. Supp. 3d 712,717 (E.D. Pa. 2017) (citation omitted).  In other words, a plaintiff's pro se status does not relieve him of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.,* 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz,* 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

    D. Analysis

        1. Defendants' Motion for Summary Judgment

Defendants Arias, Beesley, Gibson, McGinley, Parcell and Shurock[1] seek summary judgment based on Talbert's failure to properly exhaust his administrative remedies before initiating this lawsuit.  Because exhaustion is a "prerequisite to an inmate bringing suit," it is a "threshold issue that courts must address to determine

---

[1] Defendants concede that Talbert administratively exhausted his claim against Casey and, accordingly, have not sought summary judgment on Casey's behalf.

whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting source omitted). Consequently, the Court will address Defendants' motion first.

In broad brush, the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be pleaded and proven by defendants. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. First, "within 15 working days after the event upon which the claim is based," the prisoner must submit a written grievance for review by the Facility Grievance Coordinator ("FGC") using the appropriate form. DC-ADM 804, § 1.A.8. *See also Lewis v. Sutherland*, 2024 WL 6957719, at *5 (W.D. Pa. Oct. 18, 2024). The FGC must provide an initial review response to the grievance to the inmate "within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System." DC-ADM 804 at § 1.C.5.g. Second, "if the FGC has rejected the grievance or the inmate is otherwise dissatisfied with the initial review response," the inmate may appeal to the prison's Facility Manager "within 15 working days from the date" the

inmate receives "the initial review response/rejection." *Lewis*, 2024 WL 6957719, at

*5; DC-ADM 804 at § 2.A.1.a, b. The Facility Manager must then notify the inmate

in writing "of his/her decision within 15 working days of receiving the appeal." *Id.* at

§ 2.A.2.d. Finally, "[a]ny inmate who is dissatisfied with the disposition of an appeal

from the [Facility Manager]" may appeal to the Secretary's Office of Inmate

Grievances and Appeals ("SOIGA") "within 15 working days from the date of the

[Facility Manager's] decision." *Id.* at § 2.B.1.b. Once these three steps have been

satisfied, a grievance has ordinarily been administratively exhausted for purposes of

the PLRA.

Apropos to the instant case, the statute also requires a prisoner's completion

of the administrative review process to satisfy the applicable procedural rules of the

prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145,

149 (3d Cir. 2015). This requirement – frequently referred to as "proper exhaustion"

– serves to protect "administrative agency authority" over the matter, gives the

agency "an opportunity to correct its own mistakes . . . before it is haled into federal

court," and "discourages disregard of [the agency's] procedures." *Brown v. Wetzel*,

2020 WL 1249081, at *4 (W.D. Pa. Mar. 16, 2020) (quoting *Woodford v. Ngo*, 548 U.S.

81, 90 (2006) (internal quotation marks and additional quoting sources omitted)).

DC-ADM 804 contains two procedural rules that impact Talbert's claims in the

instant case. The first mandates that an inmate who "desires compensation or other

legal relief normally available from a court" must "request the relief with specificity

in his/her initial grievance." *See Wright v. Sauers*, 2017 WL 3731957 (W.D. Pa. Aug.

30, 2017); *Spruill*, 372 F.3d 218.  The second requires the inmate to "identify all persons relevant to his claim" in the grievance.  *Lewis v. Sutherland*, 2024 WL 6957719, at *6 (W.D. Pa. Oct. 18, 2024) (emphasis omitted).  Failure to identify a defendant or request a form of legal relief (including monetary damages) in a grievance precludes the inmate from suing the unnamed defendant or seeking that form of relief in a federal lawsuit, even if the inmate appealed that grievance to the Secretary's Office for final review.  *See, e.g.*, *Wright*, 2017 WL 3731957, at *7 (noting that a grievance must be fully exhausted to final review *and* "properly exhausted" with respect to remedy); *Simmons v. Hice*, 2024 WL 4203782, at *3 (W.D. Pa Aug. 14, 2024) ("The failure to identify Defendants in the relevant grievances constitutes a procedural default, and does not amount to proper exhaustion.") (internal quotations and quoting source omitted).

A review of the record indicates that Talbert failed to administratively exhaust his claims against Shurock, Arias, Gibson, and McGinley, but should be deemed to have exhausted his claims against Purcell and Beesley.  Each will be discussed in turn.

a.  Shurock, Arias, Gibson, and McGinley

There is no question that Talbert failed to identify Defendants Shurock, Arias, Gibson, and McGinley in any of the three relevant grievances.  This omission "constitutes a failure to properly exhaust his administrative remedies under the PLRA" as to each of those Defendants.  DC-ADM § 804; *Williams v. Pa. Dep't of Corr.*, 146 Fed. Appx. 554, 557 (3d Cir. 2005).  Shurock, Arias, Gibson, and McGinley are

entitled to summary judgment on this basis. *Lewis*, 2024 WL 6957719, at *6 (granting summary judgment in favor of defendants who were not identified in any relevant grievance); *Preziosi v. Morris*, 2022 WL 3586667, at *6 (W.D. Pa. Aug. 22, 2022) (holding that inmate failed to exhaust against certain defendants where his grievance "failed to provide enough information indicating they were involved in the events about which he was complaining").

### b. Purcell

Talbert's grievance against Purcell, Grievance # 1042142, was denied at the initial level of review and was not appealed further. *See* ECF No. 156-4. Talbert contends, however, that he "never received a copy of [his] initial grievance response in regards to the June 28, 2023 incident . . . which practically made the final review unavailable." ECF No. 163 ¶ 5. Talbert attributes this oversight to the fact that he was transferred from SCI-Coal Township to SCI-Forest shortly after filing his grievance. *Id.* ¶ 4. He maintains that, "had [he] received a copy of these responses, then [he] would have appealed them to final review." *Id.* ¶ 6.

The Court of Appeals for the Third Circuit has acknowledged that, under certain narrow circumstances, the actions of prison officials may render the administrative review process unavailable to an inmate. *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002). One such situation is where prison officials fail to respond to a grievance in a timely manner.[2] *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) (holding that a prison's failure to timely respond to an

---

[2] Other circumstances not at issue here include "machination, misrepresentation, or intimidation." *Lawson v. Barger*, 2019 WL 2085813, at *4 (W.D. Pa. Apr. 11, 2019) (citing *Woodford v. Ngo*, 548 U.S. 81, 102 (2005)).

inmate's properly filed grievance renders its remedies "unavailable" under the PLRA). Under such circumstances, the prisoner's administrative remedies "are deemed exhausted" upon the expiration of the state's time to respond. *Id.* (quoting *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 394 (6th Cir. 2004)).

The caselaw is less clear when the record indicates that prison officials responded to an inmate's grievance in a timely manner but may not have transmitted that response to him. The Court recently addressed this circumstance in *Angle v. Montag*, 2023 WL 2245411, at *4 (W.D. Pa. Feb. 27, 2023). In *Angle*, the inmate argued that the "administrative remedies were made unavailable to him because, although he appealed the [initial review response] to the facility manager, he did not receive a copy of the facility manager's response." *Angle*, 2023 WL 2245411, at *4 n. 4. As in the instant case, Angle attributed this oversight to the fact that he was transferred to another institution before the facility manager issued his response. *Id.* The Court held that these averments "fail[ed] to create a triable issue of material fact regarding [Angle's] claim that administrative remedies were unavailable to him" because, in part, "his claim of not receiving these documents appear[ed] incompatible with his assertion that he exhausted his grievance through final appeal." *Id.*

There is no such ambiguity here. Talbert, in his sworn declaration, maintains that he never received a response to his grievance and that, if he had, he would have filed a timely appeal. Defendants – despite that "[f]ailure to exhaust administrative remedies under the PLRA is an affirmative defense that [they] must plead and prove" – have not submitted any evidence to rebut Talbert's averment and create a genuine

issue of material fact. *Angle*, 2023 WL 2245411, at *4. The grievances themselves do not indicate whether they were ever provided to Talbert, and the only supporting exhibit submitted in conjunction with those grievances is a printed history of Talbert's entire grievance history. ECF No. 156-1. That document lists all the grievances Talbert ever filed but offers no direct evidence as to whether (or how) responses were transmitted to Talbert. *See* ECF No. 156-1. Nor is there any circumstantial evidence of delivery, such as an affidavit from a records custodian explaining the procedures for delivery of a grievance response to an inmate who has been transferred to another institution. *See, e.g.*, *Sims v. Wexford Health Sources*, 2015 WL 4041771, at *5 (W.D. Pa. July 1, 2015), *aff'd*, 635 Fed. Appx. 16 (3d Cir. 2015) ("DOC Defendants' . . . fail[ure] to authenticate [the copies of the grievance documents] with a sworn declaration certifying that they constitute a complete and accurate record of Plaintiff's grievance proceedings" precluded the court from "rely[ing] on such documents to definitively conclude that Plaintiff ha[d] failed to exhaust."); *Watkins v. Merriel*, 2015 WL 5722819, at *8–10 (D.N.J. Sept. 29, 2015) (finding genuine issues of disputed fact regarding whether an inmate filed grievance appeals when there was "at least some record evidence suggesting that Plaintiff did not receive responses from prison officials related to some [grievances] he submitted"). Because Talbert's averment that he never received a response to Grievance #1042142 is uncontradicted, the Court should excuse Talbert's failure to exhaust his grievance against Purcell based on the unavailability of the grievance procedure.

c. Beesley

Talbert filed Grievance #1027385 against Beesley on April 2, 2023.  ECF No. 156-3 at p. 4.  As part of the investigation into Talbert's allegations, it appears that the grievance officer filed several "Initial Level Extensions" to allow time to interview Talbert and other individuals.  *See id.* at p. 2 (acknowledging that Talbert received notice of extensions on April 28, 2023, and June 5, 2023).  On June 8, 2023, the grievance officer upheld Talbert's grievance on initial review but denied his request for monetary compensation.  *Id.* at p. 3.  In the meantime, Talbert, impatient with the delays, filed a premature appeal to the facility manager on June 7, 2023.  *Id.* at p. 2.  The facility manager denied his appeal on June 12, 2023, noting that the appeal (filed before Talbert had received the initial grievance response) was premature under DC-ADM 804 and upholding the substantive decision of the grievance coordinator.  *Id.* at p. 1.  Talbert did not appeal either decision.

Talbert raises two arguments to excuse his failure to properly exhaust Grievance # 1027385.  First, he correctly notes that an inmate does not need to appeal "favorable grievance outcomes" to exhaust his administrative remedies under DC-ADM 804 or the PLRA.  *Diaz v. Palakovich*, 448 Fed. Appx.211, 216 (3d Cir. 2011). And, in any event, Talbert has again submitted a sworn declaration that he never received the facility manager's response to his appeal and, therefore, could not appeal that response further.  ECF No. 163 ¶ 3.  As discussed above, Defendants have not submitted any evidence to create a triable issue of fact as to this averment.  The

failure to provide Talbert with a timely grievance/appeal response rendered the grievance process unavailable, satisfying the exhaustion requirement as to this claim.

d. Summary

Based on the foregoing, Defendants' motion for summary judgment should be granted as to Shurock, Arias, Gibson, and McGinley. Defendants' motion should be denied as to Talbert's claims against Purcell and Beesley.

2. Plaintiff's Motions for Judgment on the Pleadings

Prior to the close of discovery, Talbert filed two motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The first addresses his claims against Defendant Beesley, ECF No. 117, while the second relates to his claims against the remaining six Defendants. ECF No. 119. Each should be denied.

Rule 12(c) "permits a party to move for judgment on the pleadings after the pleadings are closed but within such time as to not delay the trial." *Butler v. Sissem*, 2022 WL 2669226, at *2 (W.D. Pa. July 11, 2022). The standard of review on a motion for judgment on the pleadings "is the same that applies to a motion to dismiss pursuant to Rule 12(b)(6)." *Butler*, 2022 WL 2669226, at *2 (citing *Revell v. Port Authority of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010)). The only difference between the two motions "is that a Rule 12(b) motion must be made before a 'responsive pleading' is filed, whereas a Rule 12(c) motion can be made '[a]fter the pleadings are closed.'" *Kaite v. Altoona Student Transportation, Inc.*, 296 F.Supp.3d 736, 739 (W.D. Pa. Oct. 30, 2017) (quoting Fed. R. Civ. P. 12(b)). In each case, the court must "accept all factual allegations in the [non-moving party's] pleading as

true" and "draw all reasonable inferences in the light most favorable to the [non-moving party]." *Foreman v. Lowe,* 261 Fed. Appx. 401, 403 n. 1 (3d Cir. 2008).

Judgment on the pleadings may be granted "only if, viewing all facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012). In the rare circumstance where the party seeking judgment on the pleadings is the plaintiff, this standard typically requires defendants to "unequivocally admit the elements of the Plaintiff's cause of action." *Sampath v. Concurrent Technologies Corporation*, 2005 WL 8168431, at *1 (W.D. Pa. Aug. 30, 2005) (citing *NLRB v. Weirton Steel Co.*, 146 F.2d 144, 145 (3d Cir. 1944) (declining to grant a plaintiff's motion for judgment on the pleadings where the defendant's admissions were not "clear-cut factually"). In making this determination, the court must consider "the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, 2016 WL 4581350, at *1 (W.D. Pa. 2016). *See also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (court may consider only the allegations in the pleadings, attached exhibits, matters of public record, and documents which are "integral to or explicitly relied upon in the complaint").

In their Answer, Defendants admit that OC spray was used against Talbert on each of the three occasions. ECF No. 108. ¶¶ 99-101. They explicitly deny, however, that OC spray was used maliciously, sadistically, and recklessly, as alleged by Talbert. *Id.* Rather, they maintain that the use of OC spray on each occasion was

justified "based upon legitimate penological interests, including security concerns and concern for staff and inmate safety." *Id*. ¶ 99. They also raise several potentially viable affirmative defenses including exhaustion and qualified immunity. *Id*. at pp. 2-3. Since a key element of an excessive force claim is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," *see Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018), these averments, accepted as true and viewed in the light most favorable to Defendants, are sufficient to defeat Talbert's motions. Each should be denied.

      3.  Plaintiff's Motions for Summary Judgment

Finally, Talbert has moved for summary judgment against Beesley [ECF No. 133], Casey [ECF No. 142], Parcell and Shurock [ECF No. 145], and McGinley, Gibson, and Arias [ECF No. 138]. Because the Court has already determined that Talbert failed to exhaust his claims against Shurock, Arias, Gibson, and McGinley, Talbert's request for summary judgment against each of those Defendants should be denied on that basis.

Talbert's request for summary judgment against Casey, Purcell, and Beesley should be rejected for a different reason: his failure to adduce or identify evidence in the record to support any of his concise statements of material fact. A party moving for summary judgment bears the burden of demonstrating the absence of genuine issues of material fact. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir.1996). To carry this burden, the Federal Rules of Civil Procedure require the moving party to submit a concise statement of undisputed material facts that

includes citations to specific evidence in the record to support each statement, typically in conjunction with an appendix of exhibits. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). *See also, e.g., Morrow v. Marucci*, 2018 WL 11307124, at *1 (W.D. Pa. Dec. 13, 2018) (noting that each factual assertion in a concise statement of material facts must "cite to evidentiary materials accompanying the motion"). The Local Rules of the Western District of Pennsylvania incorporate this same principle, stating that a party's concise statement "must cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the fact," *see* LCvR 56.B.1, and that those documents "must be included in an appendix." LCvR 56.B.3

Although Talbert has submitted a concise statement of material fact in connection with each motion, he has not supplied an appendix, citations to the record, or exhibits to support any of his averments. As our Court of Appeals has noted, a concise statement "is not evidence" and a party's "near-complete reliance on its 'Concise Statement of Undisputed Facts' [does] not fulfill the court's requirement for citations to the appendix, <u>particularly considering *that* it is the movant who carries the burden of showing the lack of disputed material facts</u>." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n. 8 (3d Cir. 2006) (emphasis in original).

In the absence of evidentiary support, the Court cannot determine whether a genuine issue of material fact exists as to any of Talbert's factual averments. Accordingly, Talbert's motions for summary judgment must be denied.

III.    Conclusion

Consistent with the foregoing, it is recommended that:

1. Defendants' Motion for Summary Judgment [ECF No. 153] should be GRANTED in part and DENIED in part. Specifically, the Court should GRANT Defendants' motion as to Defendants McGinley, Arias, Shurock, and Gibson and DENY Defendants' motion as to Defendants Beesley and Purcell.

2. Talbert's Motions for Judgment on the Pleadings [ECF Nos. 117 and 119] should each be DENIED.

3. Talbert's Motions for Summary Judgment [ECF Nos. 133, 138, 142, and 145] should each be DENIED.

4. Talbert's claims should proceed to trial against Beesley, Purcell, and Casey.

IV.    Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 21st day of January, 2026.

SUBMITTED BY:

RICHARD A. LANZILLO
Chief United States Magistrate Judge